383 So.2d 1243 (1980)
STATE of Louisiana
v.
Gregory FALCONE et al.
No. 65300.
Supreme Court of Louisiana.
April 7, 1980.
Rehearing Denied June 6, 1980.
*1244 Ferdinand J. Kleppner, Grisbaum & Kleppner, Metairie, Edwin Marger, Atlanta, Ga., for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., Research and Appeals Div., for plaintiff-appellee.
CALOGERO, Justice.[*]
The principal issue presented by this appeal is whether the prosecution of defendants in the instant case is barred, and should have been dismissed before trial, by their prior conviction of possession of marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute in another parish. Defendants' pre-trial motion to quash the indictment on the basis of double jeopardy was denied. Defendants were then tried and convicted of possession of marijuana with intent to distribute.
On February 22, 1977 defendants Steven Lukefahr, Gregory Falcone, and Joseph Trotta were arrested for possession of marijuana with intent to distribute, a violation of R.S. 40:966(A)(1). A total of seven persons were arrested on that date in three different parishes relating to a single marijuana distribution operation. On May 16, 1977 a bill of information was filed in Livingston Parish charging the three defendants and others with possession of marijuana with intent to distribute.[1] On November 9, 1977 defendants herein entered pleas of guilty to an amended bill of information charging them with possession of marijuana with intent to distribute and conspiracy to possess with intent to distribute. Meanwhile, on September 17, 1977 defendants had been charged in these proceedings in Washington Parish, with possession of marijuana with intent to distribute. On March 7, 1978 defendants were tried in Washington Parish and found guilty as charged. Defendant Lukefahr was sentenced to eight years at hard labor and defendants Falcone and Trotta each to six years at hard labor. Each defendant was also fined $15,000. Defendants now appeal the Washington Parish convictions relying on sixteen assignments of error grouped into nine arguments. Because we find merit in their argument concerning double jeopardy, we reverse the convictions and sentences.
Before trial defendant filed a motion to quash the indictments in this Washington Parish prosecution on the ground that their convictions in Livingston Parish of possession of marijuana with intent to distribute bar their prosecution in Washington Parish for the present offense. Defendants argue that their convictions in Livingston Parish were for one continuous course of conduct which involved the simultaneous possession throughout two parishes of parcels of an original single source import shipment of marijuana and that, therefore, the prosecution in Washington Parish placed them in jeopardy a second time for conduct which had constituted part of that for which already convicted in Livingston Parish.
At the hearing on the motion to quash officers involved in the investigation testified that in the middle of April of 1976 a "loose" surveillance began on three farms located in Livingston, Washington, and Tangipahoa Parishes for suspected drug smuggling activities. Because of increased activity on and between the farms on February 21, 1977 the surveillance was increased shortly before midnight. In the early morning hours of February 22 officers observed a blue refrigerated van leave the Livingston Parish farm and drive to the farm in Washington Parish. At the Washington Parish farm, officers observed a brown pickup which had been seen on the Livingston Parish property, and an eighteen wheel truck. Five individuals were observed moving constantly between the three vehicles, apparently loading and/or *1245 unloading what appeared to be marijuana. The blue van then left the farm and proceeded on Highway 16. The eighteen wheeler and the brown pickup driven by defendant Lukefahr, and with Falcone and Trotta as passengers, followed shortly thereafter. The blue van was stopped by officers and searched, with officers discovering 3800 pounds of marijuana.[2] The brown pickup was also stopped. Officers found 9.1 pounds of marijuana in the back of the open vehicle. Defendants were then arrested. Shortly after the arrests, officers obtained a warrant to search the Livingston Parish farm where they found approximately 32,000 pounds of marijuana. The Washington Parish and Livingston Parish prosecutions were thereafter instituted.
After hearing testimony on the motion to quash in this Washington Parish prosecution, the trial court found that although there had been an attempt to show that the marijuana discovered in Washington Parish was once a part of the larger quantity found in Livingston Parish, there was no evidence of this and concluded that the Washington Parish marijuana came from a source unknown. The court concluded, however, that even if the marijuana in Washington Parish was once part of the marijuana in Livingston, once it was separated and carried into Washington Parish, possession if it was a complete offense chargeable separately as such.
Article I § 15 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments of the United States Constitution prohibit placing a person in jeopardy twice for the same offense. "Double jeopardy" in Louisiana is defined in La.Code Cr.Pr. art. 596 as follows:
"Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial." (Emphasis provided)
The Official Revision Comment to La. Code Cr.Pr. art. 596 explains the need for the inclusion of subpart 2 in the article:
"Clause (2) of the above provision [Article 596] is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously, there should be only one prosecution for what is in effect one criminal course of conduct."
An examination of the record in the prosecution of the defendants in Livingston Parish makes it clear that defendants were charged in that parish with a continuous offense which involved possession and transportation of marijuana throughout several parishes. The amended bill of information[3] to which the defendants pled guilty charged that defendants did
"have in their possession with intent to distribute a controlled dangerous substance, to wit: MARIJUANA, which offense involved possession and transportation of marijuana through several parishes including the Parish of Livingston each part of a continuous offense, in violation of La.R.S. 40:966."
and Count II, that defendants did
"conspire to possess with intent to distribute a controlled dangerous substance, to *1246 wit: MARIJUANA, which conspiracy was part of a continuous offense throughout several parishes, including Livingston Parish, in violation of La.R.S. 40:979."
The state's answers to the defendants' motion for a bill of particulars filed in Livingston Parish on July 19, 1977 also indicates that a continuous offense in both Livingston and Washington Parishes was the basis for the charge and that the Livingston prosecution encompassed the marijuana possessed by defendants in both parishes. To defendants' request for the names of the persons who observed defendants commit the charged offense, the state named officers who observed defendants "Lukefahr [David?] and Stout" and responded that as to "all other defendants [presumably referring to, among others, Steven Lukefahr and his two co-defendants herein]," "they will be tied into the case through the overall scheme which had to do with Washington Parish farms, Tangipahoa farms, and Livingston Parish farms." In response to defendants' question as to whether any physical evidence was seized from defendants, the state answered that evidence was seized in both Livingston and Washington Parishes. Additionally when asked what the exact quantities were that were seized, the state's answer included the substantial amounts of marijuana that were seized in Washington Parish.
It seems clear from the record of the prosecution of defendants in Livingston Parish that the state charged them with a continuous offense throughout the several parishes which involved an overall scheme of possession of marijuana with intent to distribute. Furthermore the state's election to prosecute defendants in this manner was logical based on the facts of the case. At the hearing on the motion to quash Drug Enforcement Agent Larry Carver testified that it was the conclusion of the DEA officials who participated in the investigation that the marijuana seized in Livingston, Washington, and Tangipahoa Parishes was all part of one large cache brought into the area for distribution. He testified that the marijuana seized in Livingston Parish was packaged basically the same as all of the other marijuana found in the other parishes. Officer Thomasson of the Louisiana State Police also testified that it was his conclusion that all of the marijuana seized had been obtained from the same source.
Based on the record of the prosecution in Livingston Parish we conclude that the state has already prosecuted defendants in Livingston Parish for the marijuana possession in Washington Parish as part of the charge in Livingston Parish. The documents in that prosecution indicate that the state chose to include the possession in both Washington and Livingston Parishes in the charge. And while we do not reach the issue of whether the state might have been able to prosecute these defendants for a separate chargeable offense in Washington Parish had the Livingston prosecution not included the marijuana possessed in Washington Parish, the state, having prosecuted defendants in Livingston Parish for marijuana possessed in both parishes, can not now prosecute defendants for possession of that part of the marijuana in Washington Parish.
One additional issue must be addressed in this appeal. Shortly after this case was scheduled for oral argument, the state filed a motion to stay or dismiss the appeal on the grounds that the defendants had "skipped bail" and were fugitives from justice. The state argued that because defendants chose to "flaunt the judicial process" they ought not be afforded the benefits of an appeal.
We have determined to consider the defendants' appeal notwithstanding the fact that they are fugitives from justice because the law in this area is settled. Former R.S. 15:548 provided that "if an appellant be a fugitive from justice on the return day or the day fixed for the hearing of his appeal, the appeal will be dismissed." In the new Code of Criminal Procedure effective January 1, 1967 there is no comparable provision. The Official Revision Comment under La. Code Cr.Pro. art. 919 explains the omission of the provision as follows:
"Former R.S. 15:548 provided that if the appellant was a fugitive from justice on the return day or the day fixed for *1247 hearing on this appeal, the appeal would be dismissed. The provision is omitted from this Code, because it is unfair to the defendant. For example, if a man appealed from a death sentence and he escapes, under the provisions of former R.S. 15:548, the effect is to make the escape a capital offense, since he loses his right to appeal. Furthermore, the more frightened a convicted defendant is, the more likely he is to attempt to escape, and he should not be denied his right to an appeal because of such circumstances."
And in State v. Lampkin, 253 La. 337, 218 So.2d 289 (1969) this Court reviewing this very issue determined that despite the fact that a defendant is a fugitive at the time of his appeal, the appeal should be considered.

Decree
For the foregoing reasons the convictions and sentences of defendants are reversed and the charges herein ordered dismissed.
REVERSED; CHARGES ORDERED DISMISSED.
BLANCHE, J., dissents.

Upon Application for Rehearing
PER CURIAM.
In an application for rehearing the state argues that under State v. Sawyer, 220 La. 932, 57 So.2d 899 (1952), Washington Parish had exclusive jurisdiction over the continuous offense committed in Livingston, Washington, and Tangipahoa Parishes because of defendants' arrest in Washington Parish. The state argues that because exclusive jurisdiction was in Washington Parish, the prosecution in Livingston Parish is not a bar to further prosecution in Washington under double jeopardy principles.
State v. Sawyer, whatever its merit, is distinguishable from the instant case. In Sawyer the Court relied upon former R.S. 15:78[*] to find that arrest of a defendant vests exclusive jurisdiction in that parish. In the present Code of Criminal Procedure the comparable provision (see West's concordance table) is Article 315 which provides as follows:
"Art. 315 Authority to fix bail
The following magistrates, throughout their several territory jurisdictions, shall have authority to fix bail:
(1) District courts having criminal jurisdiction, in all cases;
(2) City or parish courts having criminal jurisdiction, in cases not capital;
(3) Mayor's courts and traffic courts in criminal cases within their trial jurisdiction;
(4) Juvenile and family courts in criminal cases within their trial jurisdiction; and
(5) Justices of the peace in cases not capital or necessarily punishable at hard labor."
The purpose of Article 315 is obviously to give magistrates and judges the authority to fix bail within their respective jurisdictions; the statute does not confer jurisdiction for the purposes of prosecution or make the jurisdiction in which a defendant is arrested the exclusive jurisdiction for prosecution.
Accordingly the state's application for rehearing is denied.
LEMMON, J., not participating.
DENNIS and BLANCHE, JJ., would grant rehearing.
NOTES
[*] Chief Judge Paul B. Landry, Jr., retired, participated in this decision as an Associate Justice Ad Hoc.
[1] The initial bill filed in Livingston Parish charged David Lukefahr, Steven Lukefahr, Thomas Lukefahr, John Shields, Paul Stout, Joseph Trotta, and Gregory Falcone as defendants. The bill was later amended to delete David and Thomas Lukefahr, and Paul Stout as defendants.
[2] This truck was driven by defendant's brother, Thomas Lukefahr. Thomas was convicted of possession of marijuana with intent to distribute in a separate Washington Parish prosecution. His conviction was affirmed by this Court at 363 So.2d 661 (La.1978).
[3] The original bill of information filed against defendants charged that they did "have in their possession with intent to distribute a controlled dangerous substance, to wit: MARIJUANA." The bill was at some point amended to add that the "offense involved possession and transportation of Marijuana through several parishes including the Parish of Livingston, each part of a continuous offense, in violation of La.R.A. [La.R.S.] 40:966." The final bill to which the defendants pled guilty also included a second count for conspiracy to possess with intent to distribute, which count was apparently added as a part of a plea bargaining agreement between defendants and the state.
[*] Former R.S. 15:78 provided as follows:

"The judges and other magistrates of all courts having criminal jurisdiction throughout the state, are hereby vested with jurisdiction over any person arrested for any crime or for the violation of any ordinance under and within their respective jurisdictions, from the moment said person is arrested and taken into custody by any peace officer, with power and authority to immediately parole or release on bail such person so arrested over whom they have jurisdiction as aforesaid, provided the offense charged be bailable."