472 So.2d 85 (1985)
STATE of Louisiana
v.
Manuel CABALLERO.
No. 85-KA-25.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
*86 John M. Mamoulides, Dist. Atty., Guy DeLaup, Asst. Dist. Atty., Elizabeth M. Gaudin and Dorothy A. Pendergast, Asst. Dist. Attys., Research and Appeals, Twenty-Fourth Judicial Dist., Gretna, for plaintiff-appellee.
Samuel S. Dalton, Jefferson, for defendant-appellant.
Before BOUTALL, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
On June 15, 1982, defendant, Manuel Caballero, was arrested in Orleans and Jefferson Parishes for possession of methaqualone (quaaludes) with intent to distribute, a violation of LSA-R.S. 40:967. An Orleans Parish bill of information was filed charging the defendant with possession of methaqualone (quaaludes) with intent to distribute. On October 5, 1983, he pled guilty as charged and was sentenced to serve five years at hard labor.[1] On April 5, 1984, defendant was charged in Jefferson Parish with possession of methaqualone (quaaludes) with intent to distribute. On October 9, 1984, defendant pled guilty as charged reserving his rights to appeal the denial of his motions to quash the search warrant and suppress the evidence seized thereunder, based on State v. Crosby, 338 So.2d 584 (La.1976). He was thereafter sentenced to serve five years at hard labor to run concurrently with the Orleans Parish conviction. Defendant now appeals the Jefferson Parish conviction.
The evidence reveals that on June 15, 1982, at about 3:50 p.m. in Orleans Parish, Detective Walter Gifford and Officer McCaffery were on patrol when Detective Gifford received a radio message from his office left by one of his confidential informants (C.I.) that defendant Caballero was now going to his apartment at 1223 Lowerline to secure some narcotics and transport them to an unknown location. The informant stated that defendant would leave from his apartment carrying a bag and would drive away from his apartment in a 1976 Cutlass. In the past, the informant had proven his reliability and credibility supplying Detective Gifford with information which had led to a number of arrests and convictions.
One week earlier (on June 7, 1982) Detective Gifford received information from this C.I. that Caballero was dealing drugs out of his Orleans and Jefferson Parish residences and would receive a large supply in one week. Detective Gifford at that time notified Jefferson Parish Officer Accardo and began an Orleans Parish investigation during which the informant pointed out the defendant's Orleans Parish residence and gave him the license number of defendant's *87 Cutlass. The officer also obtained a picture of the defendant from the Bureau of Investigation of the New Orleans Police Department (B.I. of N.O.P.D.). Based upon the C.I.'s information and his own investigation, the officer along with other agents placed Caballero's residence under surveillance, but the officers never found the defendant nor his car at the Orleans residence until June 15, 1982.
After receiving the last tip (on June 15, 1982), the police officers immediately proceeded to the area and again placed Caballero's house under surveillance. Within a few minutes, Mr. Caballero and another Spanish male walked out of the apartment toward the defendant's 1976 Cutlass. Mr. Caballero opened the trunk and put in a brown tote bag that he had carried with him from inside the apartment. After closing the trunk, Caballero got into the driver's seat and the other man got into the passenger seat and they drove off. The officers followed and within a few blocks stopped the vehicle and arrested Mr. Caballero. (A handgun was also seized from the driver's side floor.) Officer McCaffery then took the car keys from the ignition and opened the trunk where he found and searched the brown tote bag, discovering seven thousand methaqualone tablets. Caballero then gave consent to the officers to search his Jefferson and Orleans Parish residences. Officer Gifford alerted Jefferson Parish Detective Accardo who, based on these events, secured a Jefferson Parish warrant to search the defendant's Jefferson Parish residence, and from there seized another 24,000 quaaludes.
Following defendant's conviction by a guilty plea, he thereafter perfected this appeal, assigning as error the following:
(1) The trial court committed reversible error when it denied defendant's motion to dismiss prosecution (autrefois convict) on July 25, 1984.
(2) The trial court committed reversible error when it denied the motion to quash search warrant and suppress evidence seized thereunder.
The issue presented in the first assignment of error is whether the Jefferson Parish prosecution of defendant is barred in that his prior conviction of possession of quaaludes with intent to distribute in Orleans Parish would constitute double jeopardy. Defendant's premise for argument is that his conviction in Orleans Parish was for one continuous course of conduct which involved the simultaneous possession through-out the two parishes of caches of an original single source of quaaludes; and that, therefore, the prosecution in Jefferson Parish placed him in double jeopardy a second time for conduct which constituted part of that for which he had already been convicted in Orleans Parish. For this premise, defense counsel relies on LSA-C. Cr.P. Article 596 and its judicial interpretation in State v. Falcone, 383 So.2d 1243 (La.1980). We disagree.
In State v. Falcone, supra, the several defendants were operating a single marijuana distribution operation from three farms located in Livingston, Washington and Tangipahoa Parishes. In a prosecution in Livingston Parish, the state charged the defendants with a continuous offense throughout these parishes of possession of marijuana with intent to distribute. The defendants pled guilty. Subsequently the state made the same charge against defendants in Washington Parish. Defendants' pre-trial motion to quash the indictment in Washington Parish on the basis of double jeopardy was denied.
At the hearing on the motion to quash, officers involved in the investigation testified that beginning in mid-April, 1976, a loose surveillance had been conducted on the three farms located in Livingston, Washington and Tangipahoa Parishes for suspected drug smuggling activities. Because of increased activity on and between the farms on February 21, 1977, the surveillance was increased shortly before midnight. In the earlier morning hours of February 22, 1977, officers observed a blue van drive from the Livingston Parish farm to the Washington Parish farm. At the Washington Parish farm, officers observed a brown pickup truck and an eighteen *88 wheeler. The defendants were observed loading and/or unloading from the vehicles what appeared to be marijuana. Each of the three vehicles then left the farm and proceeded down the highway. The officers stopped the blue van and the brown pickup truck discovering a large quantity of marijuana contained in each vehicle. The defendants were arrested. In a subsequent search of the Livingston Parish farm, the officers seized another large quantity of marijuana.
The Louisiana Supreme Court found that the Washington Parish proceedings constituted double jeopardy, citing the Louisiana Constitution, the United States Constitution and LSA-C.Cr.P. Article 596, along with Official Revised Comment (d).
LSA-C.Cr.P. Article 596 and Comment (d) following that article states:
"Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
"(d) Clause (2) of the above Art. 596 is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously there should be only one prosecution for what is in effect one criminal course of conduct."
The Falcone court classified the offense as a continuous one, notwithstanding the separate seizures in each parish as "this continuous offense was the scheme to possess the marijuana with the intention to distribute it amongst the Parishes." At page 1246.
To reach the result in Falcone, the court looked at the record of prosecution which showed that: (1) the Livingston Parish bill of information actually charged the defendants with a continuous offense which involved possession and transportation of an unspecified amount of marijuana throughout several parishes; (2) the state's answers to the defendants' motion for a bill of particulars filed in Livingston Parish actually stated that the distribution was an overall scheme which had to do with Washington Parish farms, Tangipahoa Parish farms and Livingston Parish farms, and that the Washington Parish prosecution was based on evidence seized in both Livingston and Washington Parishes; and (3) testimony of the drug enforcement officials that the marijuana seized in Livingston, Washington and Tangipahoa Parishes was all part of one large cache (and likely obtained from one source) brought into the area for distribution. The court stated that these facts showed that the state chose to include the possession in both Washington and Livingston Parishes in the charge, and that on these facts defendant had shown his conviction had placed him in double jeopardy for the same offense.
However, the court specifically left open the possibility that the state might have been able to prosecute the defendants for a separate chargeable offense in Washington Parish had the Livingston prosecution not included the marijuana possessed in Washington Parish. The court stated:
"And while we do not reach the issue of whether the state might have been able to prosecute these defendants for a separate chargeable offense in Washington Parish had the Livingston prosecution not included the marijuana possessed in Washington Parish, the state, having prosecuted defendants in Livingston Parish for marijuana possessed in both parishes, cannot now prosecute defendants for possession of that part of the marijuana in Washington Parish."
Falcone, supra, at 1246.
The state here argues the facts of the instant case bring it within this caveat and that it should apply to uphold defendant's Jefferson Parish convictions. The trial court relied on Falcone and stipulation of counsel (noted infra) for its denial of defense *89 counsel's pre-trial motion to quash the indictment on the basis of double jeopardy.
The facts in the instant case are distinguishable from those relied on by the Falcone court. In the instant case, the bill of information does not (in its charging of defendant Caballero) allege the offense of possession with intent to distribute in terms of a continuous offense involving an overall scheme to possess and transport quaaludes throughout Orleans and Jefferson Parishes. Nor was there any defense motion for a bill of particulars. Furthermore, defendant's conviction in Orleans Parish was predicated on his possession with intent to distribute the 7,000 quaaludes seized from the trunk of defendant's car a short distance from his Orleans Parish residence, while the conviction in Jefferson Parish was predicated on his possession with intent to distribute 24,000 quaaludes seized from his Jefferson Parish residence. Thus, unlike the record in State v. Falcone, supra, the state did not include the possession in both Orleans and Jefferson Parishes in the Jefferson Parish charge against the defendant; although in joint stipulations in connection with defendant's motion to dismiss prosecution, counsel for both state and the defense agreed that the quaaludes found in the Orleans Parish search was part of, and taken from, the cache of quaaludes found in the Jefferson Parish residence.[2]
Even assuming that the two caches were originally from one single source and possessed with the one intent to distribute in Jefferson and Orleans Parish, in our opinion Falcone does not prohibit the state from prosecuting for possession of that part of the quaaludes in Jefferson Parish not previously included in the prosecution in Orleans Parish. Consequently we do not find that this assignment of error provides a basis for reversal.
On appellant's second assignment of error, he contends that the trial court committed reversible error when it denied the motion to quash search warrant and suppress evidence seized thereunder.[3]
Defendant contends that his Orleans Parish arrest was unlawful due solely to a lack of probable cause for the stop. Thus, he argues, since the Jefferson Parish warrant was based on the illegally obtained evidence in New Orleans, the evidence seized from his Jefferson Parish residence was unconstitutionally obtained and therefore cannot be used against him. In this regard defendant relies on State v. Ruffin, 448 So.2d 1274 (La.1984).
In Ruffin, a reliable police informant told police that a person was standing on the street corner in Baton Rouge attempting to get someone to help him cash a stolen check. The informant did not indicate how he obtained the information.[4] Finding Ruffin in the described location, the police placed him under arrest and after a search the check was seized. The *90 Louisiana Supreme Court found no probable cause for arrest in this case under the totality of the circumstances test as the sole basis for the arrest was Ruffin's presence on the corner where the informant stated he would be standing.
In a later case, State v. Raheem, 464 So.2d 293 (La.1985), the Louisiana Supreme Court again reversed a defendant's conviction finding no probable cause for arrest based on information from a confidential informer. There the reliable informant told police that two black males and one black female were selling a large quantity of drugs in a known drug-dealing area of Baton Rouge. The informant identified the car. The officers immediately proceeded to the area, spotted the car and followed it for a short distance. They then stopped the vehicle and the arrest, search and seizure followed.
The court in Raheem discussed, as they did in Ruffin, the proper test to be applied to a warrantless arrest based on information received from a confidential informer. The court noted that the U.S. Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) abandoned the inflexible application of the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). That test required a showing of facts relating to the informant's "basis of knowledge" and his "veracity" or "reliability." The Gates court instead applied a "totality of the circumstance" analysis. In Ruffin and Raheem, the Louisiana Supreme Court concluded that while no longer controlling, the Aguilar factors, and the corrobroation of the details of an informant's tip by independent police investigation, are relevant and valuable considerations in applying the totality of the circumstances test.
The Louisiana Fourth Circuit Court in State v. Caballero, 464 So.2d 939 (La.App. 4th Cir.1985), (defendant's appeal of the New Orleans conviction related to this case) applied the Ruffin analysis to defendant's appeal of his conviction in Orleans Parish. The court there rejected defendant's argument finding Ruffin distinguishable in that Caballero's arrest was based on more detailed corroborated information. We agree and for that reason also find the Raheem case does not change the result.
In the instant case, the informant's veracity was established by the fact that he had supplied information in the past that led to many arrests and convictions. On the other hand, the informant did not expressly set forth the basis of his knowledge or how he knew that defendants are selling drugs. However, the confidential informant here contacted the detective one week prior to the arrest. After identifying defendant by name, he told the detective that Caballero was dealing drugs and would receive a large supply in one week. In an independent police investigation, the C.I. pointed out the Caballero residence in New Orleans and supplied the make, model and license number of Caballero's car. The officer subsequently obtained a picture of Caballero from the Bureau of Investigation of the New Orleans Police Department. One week later the C.I. notified the detective that the defendant and another male were then present in the New Orleans residence and were going to leave shortly with a large quantity of quaaludes in a bag and that they would be driving Caballero's 1976 Cutlass.
The officers went immediately to the address and set up surveillance. After a short wait, the events transpired as the informant stated. Thus, the tip was corroborated by the officer's going to the residence, checking the description and license number of the car, by Caballero's possession of the tote bag and by the short time which passed from the time the tip was received and the officers' observance of the defendant leaving his house with the bag.
With every bit of the informant's tip being personally corroborated except for the actual knowledge that the quaaludes were in the bag, the officers had within their knowledge grounds to believe the rest of the tip: that the bag contained quaaludes and that Caballero had committed a *91 crime. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Tomasetti, 381 So.2d 420 (La. 1980). Similarly, the evidence indicates that the information from the informant was a result of actual knowledge. Consequently, we find that the motion to suppress was correctly denied in that the warrantless arrest was based on probable cause and the resulting search of the vehicle, as well as defendant's Jefferson Parish residence, was therefore justified. United States v. Ross, 456 U.S. 798, 102 S.Ct., 2157 L.Ed.2d 572 (1982); State v. Brooks, 452 So.2d 149 (La.1984).
For the foregoing reasons, and after a review of the law and evidence, defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Defendant's conviction of the Orleans Parish charge was affirmed on appeal. State v. Caballero, 464 So.2d 939 (La.App. 4th Cir.1985).
[2] Stipulation No. 4

It is further stipulated that if Manuel Caballero [were] placed on the stand, under oath, as a witness in this proceeding, he would testify that the matter referred to as methaqualone in the bill of information in the Orleans Parish matter (Exhibit "B") and found in the trunk of his vehicle in Orleans Parish was part of and taken from the matter referred to as methaqualone in the bill of information outstanding herein (Exhibit "A") and found in his apartment at 2212 North Arnoult Street, Metairie (Jefferson Parish), Louisiana, Apartment B212, as a result of the search warrant dated June 15, 1982 attached hereto and made a part of this stipulation and marked Exhibit "D".
Stipulation No. 5
The state has no evidence with which to contradict Stipulation No. 4
[3] Because defendant's motion to quash the Jefferson Parish search warrant and suppress evidence seized thereunder was based solely on the premise that the information contained in the warrant was obtained through an illegal stop and seizure of defendant Caballero in Orleans Parish, the Orleans Parish suppression hearing was made part of the record of defendant Caballero's Jefferson Parish suppression hearing to be considered on appeal.
[4] In State v. Ruffin, supra, it was recognized by the court in its analysis of the probable cause issue that the informant was reliable, having previously assisted the officer in "fifty arrests and thirty to forty convictions." Supra, at 1276.