706 So.2d 1044 (1998)
STATE of Louisiana
v.
Jimmy R. WATSON.
No. 97-KA-0353.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 1998.
*1045 Harry F. Connick, District Attorney, Raymond R. Egan, III, Assistant District Attorney of Orleans Parish, New Orleans, for Plaintiff/Appellant State.
Kevin V. Boshea, Regan & Boshea, P.L.C., New Orleans, for Defendant/Appellee Jimmy R. Watson.
Before SCHOTT, C.J., and BARRY and MURRAY, JJ.
MURRAY, Judge.
The State of Louisiana appeals the trial court's quashing of a bill of information charging Jimmy R. Watson in Orleans Parish with possession with intent to distribute cocaine. For the following reasons, we reverse, and remand the matter to the trial court for further proceedings.
STATEMENT OF THE FACTS:
On October 5, 1995, Trooper John Schmidt of the Louisiana State Police, received a tip from a confidential informant that defendant, Jimmy Watson, would be delivering approximately three ounces of cocaine to an unknown person at a shopping center located in Jefferson Parish. The informant stated that Mr. Watson would be driving a primer gray Ford van. The trooper then initiated his own investigation, learning that Mr. Watson had two previous convictions for distribution and conspiracy to distribute cocaine. He also obtained a photograph of Mr. Watson. Trooper Schmidt, along with other state police officers and a DEA agent, began a surveillance of the shopping center parking lot.
At approximately 6:25 p.m. on October 5, 1995, the surveillance team observed Mr. Watson driving west on the I-10 service road adjacent to the shopping center in a van similar to the one described by the informant. Mr. Watson drove past the shopping center, turned around and came back towards the shopping center, driving very slowly and scanning the parking lot. Mr. Watson then parked his vehicle near the street, and walked across the lot towards a pay phone, constantly scanning the lot. At this point, the officers stopped Mr. Watson for investigation. Mr. Watson was advised of the circumstances surrounding the stop, and he volunteered to cooperate. He signed a consent to search form, and allowed his van to be searched. The officers found a bag containing, among other things, eighty-eight grams of a white powdery substance, later determined to be cocaine.
After Mr. Watson was arrested and transported to the state police narcotics office, he advised Trooper Schmidt that he wanted to cooperate further with the investigation, and volunteered that he also had cocaine in his apartment in Algiers. At approximately 9:20 p.m., Mr. Watson and several state police narcotics agents, drove to the Algiers apartment, where Mr. Watson executed a second consent to search form. The agents discovered approximately thirty-five grams of cocaine, and other drug paraphernalia in the apartment.
Mr. Watson was then transported to the Jefferson Parish Correctional Center and booked with possession with intent to distribute eighty-eight grams of cocaine. The narrative report of Trooper Schmidt specifically states that the booking in Jefferson Parish was relative to the cocaine seized during the search of Mr. Watson's van in Jefferson Parish.
Once it was verified that all of the cocaine seized in both searches was indeed cocaine, Trooper Schmidt prepared an application for an arrest warrant for Orleans Parish relative to the thirty-five grams of cocaine seized in Mr. Watson's apartment. The arrest warrant issued and Mr. Watson was arrested by New Orleans police on November 18, 1995.
Mr. Watson subsequently was charged by bill of information in Jefferson Parish for possession with intent to distribute cocaine. He pled guilty under a Crosby plea, and was sentenced to five years at hard labor, with credit for time served. The Jefferson Parish District Attorney's Office declined to multiple bill Mr. Watson.
In connection with the Orleans Parish arrest, Mr. Watson was charged by bill of information with possession with intent to distribute cocaine. His counsel filed a motion to quash on the grounds of double jeopardy claiming that the offense charged in Orleans Parish was actually part of a continuing *1046 offense of possession with intent to distribute cocaine. The motion was denied by the trial court on December 13, 1996, but was reurged by defense counsel on January 20, 1997, and was granted.[1] It is from that ruling that the State appeals.

DISCUSSION:
The State argues that the motion to quash based on double jeopardy does not lie because the prosecution and conviction in Jefferson Parish was based only on the discovery of the cocaine in Mr. Watson's van in Metairie, and the prosecution of the present case is based only the discovery of the cocaine in Mr. Watson's apartment in Algiers. Mr. Watson counters that the offense charged actually was one continuous transaction involving the same officers, and recovery of the total amount of cocaine was within a short period of time so that the Orleans Parish prosecution constitutes double jeopardy.
Louisiana Code of Criminal Procedure art. 596 provides:
Double jeopardy exists in a second trial only when the charge in the trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which the defendant was in jeopardy in the first trial.
This article is based on both the Fifth Amendment of the United States Constitution and Art. 1, Sec. 15 of the Louisiana Constitution, which guarantee that no person shall be twice placed in jeopardy for the same offense. The purpose of these provisions is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense, and also to protect a person against multiple punishment for the same conduct. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), rev'd on other grounds; State v. Vaughn, 431 So.2d 763 (La.1983).
Louisiana has not adopted a "same transaction test" that would prohibit prosecutions for different crimes committed during one sequential, continuing course of conduct on double jeopardy grounds. City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975). Instead Louisiana has used both the "Blockburger test" and the "same evidence test" to determine if double jeopardy exists. La. Code Crim. Proc. art. 596; State v. Vaughn, supra, and cases cited therein.
The "Blockburger test" was established by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Court stated:
"... The applicable rule is that where the same act or transaction constitutes violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
The "same evidence test", adopted and explained in State v. Steele, 387 So.2d 1175 (La.1980), provides that:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for the conviction, not all the evidence introduced at trial ...
The `same evidence test' is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
Id. at 1177. Thus, double jeopardy offers protection not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, supra.
Mr. Watson relies on State v. Falcone, 383 So.2d 1243 (La.1980) to support the trial court's quashing of the charges in Orleans *1047 Parish. The defendants in Falcone were arrested in Washington Parish for possession with intent to distribute marijuana. The arrests were the result of a surveillance of three farms in Washington, Livingston and Tangipahoa Parishes. After the defendants were arrested, a search warrant was secured for the Livingston Parish farm and 32,000 pounds of marijuana was discovered. A bill of information was filed in Livingston Parish charging the defendants with possession with intent to distribute, and was later amended to add that the offense charged was part of a continuing offense of possession with intent to distribute marijuana over several parishes including Livingston. Before the defendants entered guilty pleas to those charges, they were also charged in Washington Parish with possession of marijuana with intent to distribute. They were found guilty as charged in Washington Parish.
The Court reversed the Washington Parish conviction and dismissed the charges, noting that, in addition to the language contained in the Livingston Parish amended bill of information, the State's answers to defendants' motion for bill of particulars indicated that a continuing offense in both Livingston and Washington Parishes was the basis for the Livingston Parish charge, and that the prosecution encompassed the marijuana possessed by defendants in both parishes. The physical evidence to be used at trial was the evidence (marijuana) seized in both Livingston and Washington Parishes.
Based on these facts the Court held that the State had already prosecuted the defendants in Livingston Parish for the marijuana possessed by them in Washington Parish so that it would be double jeopardy to try them on the same charge in Washington Parish, and reversed the Washington Parish convictions. Id. at 1246.
The instant case is easily distinguished from Falcone. Mr. Watson was first tried and convicted in Jefferson Parish for possession with intent to distribute cocaine. The incident report completed by the arresting state trooper and contained in the certified records of the Jefferson Parish prosecution indicates that Mr. Watson was being charged in Jefferson Parish with "POSS.[ession] WITH INTENT TO DISTRIBUTE A SCHEDULE II CDS TO WITT (sic): COCAINE (88 GRAMS)." The bill of information does not state the amount of cocaine.
The bill of information filed in connection with the charges in Orleans Parish also charged possession with intent to distribute cocaine, with no specific amount being listed. However, the state police incident report in the Orleans Parish record indicates a charge of possession with intent to distribute cocaine, and lists the amount as thirty five grams. The application for the arrest warrant in Orleans Parish also indicates that Mr. Watson possessed with intent to distribute approximately thirty five grams of cocaine. Further, in answers to the motion for bill of particulars filed by defense counsel, the State indicates that Mr. Watson committed the offense with which he was charged at his apartment in Algiers on October 5, 1995, at approximately 9:20 p.m. The State also indicates that it intends to use as evidence the thirty five grams of cocaine which was seized from Mr. Watson's apartment in Orleans Parish. It is apparent that the Orleans Parish charge relates only to the contraband seized in Orleans Parish while the Jefferson Parish charge related only to the 88 grams of contraband seized in Jefferson Parish.
The facts of this case at bar are almost identical to those in State v. Caballero, 472 So.2d 85 (La.App. 5 Cir.1985). Mr. Caballero was arrested on the same day in both Orleans and Jefferson Parishes for possession with intent to distribute methaqualone. A confidential informant notified a New Orleans police officer that Mr. Caballero was dealing drugs out of residences in Orleans and Jefferson Parishes, and that a large supply of drugs would be received by Mr. Caballero in one week. The police officer began an independent investigation, gathering information about Mr. Caballero including the exact location of Mr. Caballero's Orleans Parish residence and a photograph of Mr. Caballero. One week later the same informant notified the same New Orleans police officer that Mr. Caballero was going to his apartment in New Orleans to pick up *1048 some narcotics and transport them into Jefferson Parish.
A surveillance was set up and Mr. Caballero was observed leaving his Orleans Parish residence, placing a tote bag into his car trunk, and driving off. The officers stopped Mr. Caballero, discovered a large quantity of methaqualone in his vehicle, and arrested him. The Jefferson Parish authorities were then notified, and a search warrant for Mr. Caballero's Jefferson Parish residence was obtained. A large quantity of methaqualone was discovered. Mr. Caballero was charged in Orleans Parish with possession with intent to distribute methaqualone. He subsequently pled guilty and was sentenced to five years at hard labor. He was later charged in Jefferson Parish with possession with intent to distribute methaqualone. He pled guilty under a Crosby plea, and was sentenced to five years at hard labor to run concurrent with the Orleans Parish conviction. He then appealed the Jefferson Parish conviction.
In affirming the conviction, the Fifth Circuit noted that the Supreme Court in Falcone specifically "left open the possibility that the state might have been able to prosecute the defendants for a separate chargeable offense in Washington Parish had the Livingston prosecution not included the marijuana possessed in Washington Parish." Id. at 88. It then concluded that Falcone did not prohibit the state from prosecuting Mr. Caballero for possession of that part of the quaaludes in Jefferson Parish not previously included in the prosecution in Orleans Parish. Id. at 89.
We find the rationale of Caballero persuasive. Double jeopardy would only lie if Mr. Watson's Jefferson Parish prosecution had included the cocaine seized in Orleans Parish. Because it did not, the Orleans prosecution is proper, and the ruling of the trial court granting Mr. Watson's motion to quash is reversed.
Because we find merit to the State's argument on this issue, we decline to address the State's other assignment of error.
REVERSED AND REMANDED.
NOTES
[1] Mr. Watson had other pending charges at that time. He pled guilty to those charges, was multiple billed, and was sentenced as a second felony offender.