h LANDRIEU, Judge.
In Case No. 395-124, the defendant, Matt Downey, was indicted for second degree murder of forty-five-year-old James Robert Major, Jr., a violation of La.Rev. Stat. M^O-RA)©).[1] Subsequently, in Case No. 397-265, the defendant was charged with possession of heroin, a violation of La.Rev.Stat. 40:966(C)(1).[2] After trial on the homicide charge, a jury on May 13, 1998, found the defendant not guilty of second degree murder, as well as not guilty of the responsive offense of manslaughter.[3] On May 15, 1998, the trial court granted the defendant’s Motion to Quash the charge of possession of heroin, finding double jeopardy precluded prosecution of the felony offense upon which the manslaughter charge was based. We affirm the district court’s ruling.
| ¡.On October 3, 1997, at about 2:30 p.m., the defendant exited his hotel room and asked Fernell Fullman, an employee of the Quality Inn, Maison St. Charles, to retrieve Major’s vehicle. The defendant, who was vomiting, asked Fullman to check on Major. Fullman went to the room and saw Major lying across the bed. He notified his supervisor, Tony Goodo, who directed housekeeping to call 911. Upon entering the room, Goodo saw Major lying across the bed, looking blue, and not moving. After the police arrived, the EMS transported Major to Touro Infirmary, where he was pronounced dead. After Detective Paul Long advised him of his rights under Miranda, the defendant recounted the events leading up to Major’s death.
The defendant met Major at a French Quarter bar called the Bourbon Pub. Sometime between midnight and 2:00 a.m. on October 3rd, the two men drove to the intersection of St. Thomas and Third Street. There, the defendant purchased $10.00 worth of crack cocaine from a subject named “Derrick,” but he told Major that it cost $20.00. When the defendant returned to the vehicle, Major ingested the cocaine by smoking it. After Major indicated his approval, the defendant purchased an additional $100.00 of cocaine for him. Thereafter, they went to the Quality Inn, where Major continued to smoke the cocaine.
Later that day, around 1:00 p.m., the two men went to an ATM machine and then to the St. Thomas housing project. Unable to find “Derrick,” they went to *130 Josephine and St. Thomas, where the defendant purchased $60.00 of heroin from a subject named “Chad.” Upon their return to the hotel, the defendant told Major that he wa.s a heroin addict and that he would try the heroin first. The defendant | ^prepared the heroin and injected it into himself using a syringe. A short time later, he told Major to use only half of a bag. Major first injected half of the bag of heroin but did not feel anything, so he injected more heroin. Thereafter, Major became unconscious.
When asked about drug paraphernalia, the defendant told the police that he had “cooked” the heroin in a can. He directed the police to a garbage can by the elevator, where they found a drink can with a crushed top and a syringe. From on top of a dresser in the room, the police retrieved a piece of cardboard and an unknown, white powdery substance, which was collected in two envelopes. No crack pipes or smoking devices were found in the room or in Major’s vehicle. The defendant was not searched or arrested that day.
Dr. Paul McGarry, the forensic pathologist with the Orleans Parish coroner’s office, performed the autopsy. He found two, fresh needle marks on Major’s arms. Major’s lungs were full of fluid, his brain and organs were dark and congested, and his veins were distended. Testing of fluids and substances from the body revealed the presence of cocaine, but it was negative for heroin. From these results, the coroner opined that death was due to a drug overdose. He stated that the coroner’s office had labeled Major’s death as an unclassified drug-related death.
The parties stipulated that the syringe tested negative for any drugs,' that the drink can contained residue of heroin, that one envelope of the white powdery substance tested positive for cocaine, and that the other tested negative for drugs of any kind.
In its sole assignment of error, the State asserts the district court erred in quashing the bill of information based on double jeopardy and/or collateral estoppel. We disagree.
UAccording to the Fifth Amendment of the U.S. Constitution and Louisiana Constitution Article 1, § 15, no person shall be twice placed in jeopardy of life or liberty for the same offense. The purpose of these provisions is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense, and also to protect a person against multiple punishment for the same conduct. State v. Vaughn, 431 So.2d 763, 767 (La.1983); State v. Watson, 97-0353, p. 4 (La.App. 4 Cir. 1/23/98), 706 So.2d 1044, 1046.
Louisiana Code of Criminal Procedure Article 596 states that double jeopardy bars a second trial when the offense charged is:
1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
In this case, the issue presented is whether the charge of possession of heroin was based on part of an offense, felony manslaughter, for which the defendant was placed in jeopardy at the first trial. As explained below, we find that the instant possession of heroin charge was identical to a key element of the offense of felony manslaughter, an offense for which defendant had previously been put in jeopardy.
One established test to determine whether two offenses are the same for double jeopardy purposes is the “distinct fact” or Blockburger test:
The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine *131 whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Louisiana courts have articulated a “same evidence” test to determine whether two offenses are the same. Under this test, offenses are the same if the evidence required to support conviction of one of the offenses would have been sufficient to sustain a conviction on the other. State v. Steele, 387 So.2d 1175, 1177 (La.1980). The “same evidence” test, more frequently applied by Louisiana courts, is somewhat broader than the Blockburger test, in that the central idea behind the “same evidence” test is that one should not be punished or put in jeopardy twice for the same conduct. State v. Miller, 571 So.2d 603, 606, 607 (La.1990); State v. Vaughn, 431 So.2d at 767. Nonetheless, both tests depend upon the proof necessary to convict, not the evidence actually introduced at trial. State v. Enemies, 392 So.2d 651, 654 (La.1980). Pertinent to the issue presented in this case, a person convicted of felony-murder cannot thereafter be prosecuted for the underlying felony, when the underlying felony formed an essential element of the earlier offense. See State v. Smith, 600 So.2d 919 (La.App. 4th Cir.1992), unit denied, 625 So.2d 1031 (La. 1993); see also Neville v. Butler, 867 F.2d 886 (5th Cir.1989).
In the first prosecution, the defendant was tried and acquitted not only of second-degree murder but also of the legislatively-mandated responsive offense of manslaughter. The trial judge instructed the jury on three possible verdicts: guilty of second degree murder, guilty of manslaughter, or not guilty. See La.Code Crim. Proc. art. 814 A(3). For second degree murder, as it related to this case, the district court’s jury charge specified three elements: (1) the defendant distributed cocaine or heroine to the victim, (2) the victim ingested or consumed the controlled dangerous substance, and (3) the victim died as a direct cause of ingesting or ^consuming the controlled dangerous substance. For felony manslaughter as it related to this ease, the district court charged the jury with two elements: (1) the defendant possessed a controlled dangerous substance, either cocaine or heroin, and (2) the victim died as a result of the defendant’s possession of the controlled dangerous substance. The State neither objected to the district court’s jury charge nor requested special instructions.
Though the defendant was acquitted of both second-degree murder and manslaughter, the State now seeks to prosecute the defendant for possession of heroin. Its argument is twofold. First, the State asserts the defendant’s alleged possession of heroin was an “immediately consecutive” criminal act, separate and distinct from the alleged homicide. The State reasons that the defendant possessed cocaine and heroin, that he distributed both drugs to the victim, and, relying on the coroner’s testimony, that the victim died as a result of the ingestion of cocaine rather than heroin. Though conceding that the crimes were “closely related as to time and sequence,” the State argues that these events were “distinctive steps.”
Second, the State asserts it is not collaterally estopped from prosecuting the defendant for the alleged possession of heroin. According to the State, the necessary element of both second degree murder and manslaughter was the cause of death. The State acknowledges that possession of cocaine was a necessary element of both charges, but it argues that a general verdict of not guilty to both charges “does not translate into the jury actually acquitting the defendant as to his possession of heroin.” The State contends it did not argue to the jury that the defendant’s possession of heroin had any direct link to Major’s death, because its |7theory of the case, in light of the coroner’s testimony, focused on *132 the defendant’s possession and distribution of cocaine.[4]
With respect to the manslaughter charge as it was explained to the jurors by the district court in this case, the offense of possession of heroin is identical to an essential element of that charge under either the Blockburger test or the “same evidence” test. The district court instructed the jurors that, to convict the defendant of manslaughter, they must first find the defendant possessed a controlled dangerous substance, either cocaine or heroin, and then find the victim’s death was a direct result of the defendant’s possession of the controlled dangerous substance. Under the Blockburger test, possession of heroin is not a separate offense from felony manslaughter because it does not require proof of a fact or element not found in the manslaughter offense. Similarly, under the “same evidence” test, evidence of the defendant’s possession of heroin necessary to prove the felony element of felony manslaughter was also sufficient to support a conviction for possession of heroin.[5] In short, the State seeks to prosecute the defendant for the underlying felony of felony manslaughter, an offense for which the defendant was previously tried and of which he was acquitted. The double jeopardy clause prevents such a prosecution.
Because we find that the second prosecution was constitutionally barred under the double jeopardy clause, we need not consider the State’s contention that the doctrine of collateral estoppel does not prohibit prosecution of the drug offense. | sAccordingly, the district court’s ruling granting the defendant’s motion to quash the bill of information is affirmed.
AFFIRMED.

. La.Rev.Stat. 14:30.1 A(3) defines second degree murder as the killing of a human being when the offender unlawfully distributes or dispenses a controlled dangerous substance classified in Schedule I or II, which is the direct cause of the death of the recipient who ingested or consumed the substance.

. La.Rev.Stat. 40:966 C(l) prohibits the knowing or intentional possession of heroin, a controlled dangerous substance classified in Schedule I as a narcotic.

.La.Rev.Stat. 14:31 A(2)(a) defines manslaughter as a homicide committed, without any intent to cause death or to inflict great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in the second-degree murder statute. Possession of cocaine and possession of heroin are such non-enumerated felonies.

. The closing arguments were not designated as part of the record.

. The State does not dispute the district court's finding that no new or separate evidence of heroin possession would be introduced at the second trial.