609 So.2d 897 (1992)
STATE of Louisiana
v.
Leroy F. CAREY, Jr.
No. 91-KA-1845.
Court of Appeal of Louisiana, Fourth Circuit.
November 13, 1992.
Harry F. Connick, Dist. Atty., Lisa M. McLachlan, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Bruce G. Whittaker, New Orleans, for defendant/appellant.
Before BARRY, PLOTKIN and LANDRIEU, JJ.
BARRY, Judge.
The defendant was convicted of being a convicted felon in possession of a firearm (La.R.S. 14:95.1). He was sentenced to four years at hard labor (no probation, *898 parole or suspension of sentence) and to pay a $1,000 fine.
The defendant argues that his motion to suppress the evidence should have been granted, and that his sentence is excessive.
The denial of the motion to suppress was considered in writ application # 90-K-1543. This Court stated that the "information provided by the confidential informant in this case was grounds for `reasonable suspicion' " and the evidence was properly seized because it was in plain view. (# 90-K-1543).
Great deference should be accorded to an appellate court's pre-trial decision on admissibility unless it is apparent in light of the subsequent trial record that the decision was patently erroneous and produced an unjust result. State v. Humphrey, 412 So.2d 507 (La.1982) (on rehearing); State v. Moran, 584 So.2d 318 (La.App. 4th Cir. 1991), writ denied 585 So.2d 576 (La.1991). An appellate court's prior determination of admissibility on a pre-trial writ does not absolutely preclude a different decision on appeal. State v. Johnson, 438 So.2d 1091 (La.1983).

MOTION TO SUPPRESS
At the motion to suppress hearing Sgt. Messina testified that on August 26, 1990 he spoke with a confidential informant who had previously provided information which led to arrests, seizures and convictions. At about 1:00 p.m. or 1:30 p.m. the informant told him that "in an hour or so" crack cocaine would be delivered in the 2300 block of Lafitte St. in the Lafitte Housing Project by a short, black male named Leroy driving a "1981-82 green Mercury Cougar or a Mercury of some type" which was in good shape. Sgt. Messina requested assistance from Officers Selby, Williams, Glasser, Stewart, and Keller. The officers maintained a surveillance.
After about 45 minutes the officers observed a green Mercury Cougar with a brown top "leaving the 2300 block out the driveway" and heading in a lakebound direction. The officers maintained a rolling surveillance of the vehicle which was driven by a black male, the defendant, with a black male and a black female as passengers. At the corner of Broad St. and Orleans Ave. the defendant met a Spanish male in a used car lot and they talked for about five minutes. Later, the officers lost the vehicle for a few moments near the Social Security building on Old Gentilly Blvd., but saw the defendant briefly exit the car.
At Elysian Fields and Old Gentilly Blvd. (after about half an hour following the Cougar) Sgt. Messina and Officer Keller "decided to stop this vehicle." Sgt. Messina admitted that the defendant had done nothing to warrant a traffic citation and he did not witness a drug transaction. He stated: "It wasn't his activities as much as the information I received...." Sgt. Messina justified the stop by stating: "It was my belief that Mr. Carey was ... involved in drug activities."
Sgt. Messina identified himself and asked the defendant to get out of the vehicle. When he exited Sgt. Messina observed a weapon on the floor of the car halfway underneath the seat. Officer Selby frisked the defendant while Sgt. Messina retrieved the loaded 9mm weapon. When asked the defendant stated that he bought the gun for $150 but he had no proof of the purchase. Officer Williams submitted the defendant's name and gun through the computer. The gun was not reported stolen, but the defendant had a prior conviction on a cocaine charge and had just completed probation. Sgt. Messina arrested the defendant for possession of the firearm based on his felony conviction. Sgt. Messina stated that the arrest occurred about 2:30 or 3:00 p.m.; the police report shows 4:00 p.m.
On cross-examination Sgt. Messina admitted that the confidential informant did not say he had purchased any drugs from the defendant or specify how the cocaine would be delivered. The informant did not indicate what the black male named Leroy would be wearing or that there would be passengers in the vehicle. Only on cross-examination after repeated defense questions seeking a link between the confidential informant and the defendant did Sgt. Messina indicate that the informant said he *899 was buying from a residence in the 2300 block (no specific address), the sellers (not identified) were out of cocaine and the delivery would be made.
At trial on cross-examination Sgt. Messina broadened the scope of the tip to include a 1981-82 "green Cougar, with a brown top...." His testimony as to the times also differed from his prior testimony. At trial the sergeant stated he met with the informant at 1:30 p.m. and the informant said the delivery of cocaine would be made between 3:00 p.m. and 3:30 p.m. (not within an hour as stated at the motion to suppress hearing). Sgt. Messina then stated: "I meant 2:30 p.m. ..." According to Sgt. Messina's trial testimony the defendant was spotted "about 3:35, 3:40" and was arrested at 4:00 p.m.
At trial Sgt. Messina conceded that he and the other officers did not see the defendant make a "drop-off" on Lafitte St. He said they followed the defendant's vehicle "to see if in fact he [the defendant] did meet up with somebody else, and we could see a transaction." Sgt. Messina conceded: "I didn't know if I had the right car...." Sgt. Messina testified to his reason for the stop:
It was at this point that we diecided [sic] to stop him to see if in fact the driver was Leroy, the information I received.... We stopped the subject, and if he didn't fit the description, and didn't have the first name, the same thing my C.I. gave me, the gentlemen would have probably been allowed to go on about his business. But in fact his name was Leroy, and he was in possession of a firearm, he was a convicted felon, and he was arrested....
Sgt. Messina conceded that the informant did not indicate the defendant would have a gun in the car.
Detectives Williams and Selby corroborated the testimony of Sgt. Messina.
The defendant's girlfriend, Sharon Dequair, testified that she, her son, the defendant and the defendant's brother were going to the social security office. They were in her car which she had given the defendant permission to drive. The defendant stopped at the used car lot because he wanted to purchase a car and they went to the social security office to get a card for her and her son. After they left the social security office the vehicle was stopped by the police. She stated that no weapon was in her car at the time of the stop.
The defendant admitted to a prior conviction for possession of cocaine. He denied ownership of the gun or that he made a statement to the police that the gun was his property.
Although the defendant couches his argument in terms of probable cause to arrest, the defendant was not placed under arrest until the weapon was seized and his prior felony record was verified. When the officers stopped the Cougar, it was an investigatory stop. This Court's focus should be on whether Sgt. Messina and the other officers had reasonable cause to stop the defendant at Elysian Fields and Old Gentilly.

LAW AND ANALYSIS
Probable cause to arrest exists when the facts and circumstances known to police officers and of which they have reasonably trustworthy information are sufficient to justify the belief by a man of ordinary caution that the subject has committed or is committing a crime. State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writs denied 531 So.2d 764 (La.1988). However, police officers may stop a person whom they "reasonably believe is committing, has committed, or is about to commit an offense." La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is less than the probable cause required for an arrest. State v. Burton, 519 So.2d 177 (La.App. 4th Cir.1987).
The reviewing court must look to the facts and circumstances of each individual case to determine whether an officer had sufficient facts to justify an infringement of the suspect's rights. State v. McGraw, 527 So.2d 435 (La.App. 4th Cir.1988). The police officer must have articulable knowledge of particular facts to reasonably suspect *900 the detained person of criminal activity and to justify the infringement on that individual's rights to be free of governmental interference. State v. Williams, 421 So.2d 874 (La.1982). This Court must consider whether the informant's tip established probable cause to arrest or reasonable suspicion to stop under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Here, the only information the officers had was a tip given by a confidential informant who had cooperated on prior occasions. Corroboration of details of an informant's tip by an independent police investigation is valuable when applying the totality of the circumstances analysis. State v. Raheem, 464 So.2d 293 (La.1985). The same factors are also relevant in the reasonable cause to stop context, however, a lesser showing is required. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
As in Raheem, the only information the police had was from the informant. However, as in Raheem, the informant did not set forth the basis of his knowledge that there would be an alleged drop. There is no showing that the informant had personal knowledge of the information. At the motion to suppress hearing Sgt. Messina testified that the informant only told him that Leroy, a short black male, would be in a green Cougar making a drop in the 2300 block of Lafitte. During cross-examination he said that the informant claimed he was buying from a house in the 2300 block of Lafitte and the cocaine ran out. At trial the additional information about the buy was not mentioned, the tip was broadened to include the brown top of the green Cougar, and times differed.
Information from the confidential informant was not based on personal knowledge as to the defendant's alleged role in a cocaine delivery. The officers followed the defendant for a period of time and did not observe suspicious activity. These circumstances are distinguishable from cases which involve an on-the-scene tip by an informant who points out the car containing drugs and no mistake was possible. See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
There is no proof or claim that the informant had purchased cocaine from the defendant or other identified seller, or that he was present when Leroy was told to make a delivery of cocaine. Except for the Cougar being in a drug trafficking area and the informant's conclusory statement as to a cocaine drop (which did not occur), there is no evidence which connects the defendant to any unlawful activity.
Under the totality of these circumstances there was no reasonable cause to stop the vehicle. This Court's decision on writ # 90-K-1543 (affirming the denial of the motion to suppress) was patently erroneous and is reversed. We pretermit discussion of the second assignment relating to the sentence.
The defendant's conviction and sentence are reversed. The motion to suppress is granted and the case remanded for further proceedings.
MOTION TO SUPPRESS GRANTED; REVERSED.
PLOTKIN, Judge, dissents with reasons.
I dissent from the opinion of the majority because I believe that reasonable suspicion did exist to stop the defendant's vehicle. In addition, the judgment of this court denying the defendant's motion to suppress evidence seized as a result of the stop was correctly decided.
The majority's reliance on State v. Raheem, 464 So.2d 293 (La.1985) is misplaced. Raheem involved the issue of probable cause necessary to justify a warrantless arrest and search. The present case involves the issue of reasonable suspicion necessary to justify a stop. In order to determine reasonable suspicion necessary to justify a stop, as the majority itself states in its opinion, a lesser showing is required under the totality of the circumstances analysis. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Since Raheem was decided under *901 the higher standard of probable cause, its applicability to the present case is limited.
Furthermore, the facts in Raheem clearly distinguish that case from the case on appeal. In Raheem, the officers ordered the occupants out of the car at gunpoint with lights flashing and sirens wailing. One officer then grabbed a purse from a defendant and thoroughly searched the purse and its contents, including a vanilla wafer box which contained drugs. The court held in that case that a warrantless arrest occurred as soon as the officers stopped the car.
In the present case, the information provided by the confidential informant was the basis for a reasonable suspicion necessary to justify a stop of the car. The officers observation of a gun in plain view thereafter justifies the seizure of the evidence without a warrant. Coolidge v. New Hampshire 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).