774 So.2d 232 (2000)
STATE of Louisiana
v.
Jimmy R. WATSON.
No. 99-KA-1448.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 2000.
Rehearing Denied September 29, 2000.
*233 Harry F. Connick, District Attorney, Orleans Parish, Jane L. Beebe, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, for plaintiff/appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, for defendant/appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY, Judge PATRICK M. SCHOTT, Pro Tempore.
PLOTKIN, Judge.
The important issue in this case is whether the police officers properly stopped, searched and seized cocaine from the defendant, Jimmy R. Watson.

PROCEDURAL HISTORY
On January 24, 1996, the defendant was charged in Orleans Parish by bill of information with possession with intent to distribute cocaine, a violation of La.R.S. 40:967. At his arraignment on January 26, 1996, he pled not guilty. On April 4, 1996, the trial court found probable cause for the defendant's arrest and denied the defendant's motion to suppress the evidence. On June 27, 1996, the original trial judge recused himself, having recently discovered that he previously represented the defendant in a federal proceeding. The case was re-allotted to a new section, and new *234 counsel was subsequently substituted for the defendant. Counsel filed various motions, including a motion to quash based on double jeopardy. In the motion to quash, the defendant averred that the offense for which he was being prosecuted in Orleans Parish was based on a continuing offense of possession with intent to distribute cocaine that had culminated in Jefferson Parish. Alleging that he had already pled guilty and been sentenced in Jefferson Parish, he argued that the Orleans Parish prosecution violated the constitutional prohibition against double jeopardy. The trial court initially denied the motion to quash based on double jeopardy. However, on January 21, 1997, defense counsel re-urged the motion to quash. The trial court took the matter under advisement and subsequently granted the motion. The State appealed the ruling, and in State v. Watson, 97-0353 (La.App. 4 Cir. 1/23/98), 706 So.2d 1044, writ denied, 98-0461 (La.6/26/98), 719 So.2d 1055, this court reversed the judgment and remanded the case for trial.
On October 1, 1998, the defendant withdrew his former plea and entered a plea of guilty as charged. That same day the State filed a bill of information charging the defendant with being a second felony offender. The State alleged that the defendant had previously pled guilty to possession of cocaine in Jefferson Parish on October 15, 1990. The defendant waived a hearing, entered a plea of guilty to the multiple bill, and was sentenced to serve fifteen years in prison without benefit of probation, parole or suspension of sentence for the first five years. The court ordered that the sentence run concurrently with a sentence imposed by the Twenty-Fourth Judicial District Court for the Parish of Jefferson for a related possession with intent to distribute cocaine offense committed by the defendant during the same time period in Jefferson Parish. Upon oral motion of defense counsel, the court ordered the plea of guilty to be accepted under the provision of State v. Crosby, 338 So.2d 584 (La.1976), reserving to the defendant the right to appeal the denial of his motion to suppress. The defendant's motion for appeal was granted.

STATEMENT OF FACT
At the motion hearing of February 9, 1996, State Trooper John Schmidt[1] of the Narcotics Division of the Louisiana State Police testified concerning the events that form the basis of the present appeal. The facts of the case, as reported in State v. Watson, are as follows:
On October 5, 1995, Trooper John Schmidt of the Louisiana State Police, received a tip from a confidential informant that defendant, Jimmy Watson, would be delivering approximately three ounces of cocaine to an unknown person at a shopping center located in Jefferson Parish. The informant stated that Mr. Watson would be driving a primer gray Ford van. The trooper then initiated his own investigation, learning that Mr. Watson had two previous convictions for distribution and conspiracy to distribute cocaine. He also obtained a photograph of Mr. Watson. Trooper Schmidt, along with other state police officers and a DEA agent, began a surveillance of the shopping center parking lot.
At approximately 6:25 p.m. on October 5, 1995, the surveillance team observed Mr. Watson driving west on the 1-10 service road adjacent to the shopping center in a van similar to the one described by the informant. Mr. Watson drove past the shopping center, turned around and came back towards the shopping center, driving very slowly and scanning the parking lot. Mr. Watson then parked his vehicle near the street, and walked across the lot towards a pay phone, constantly scanning the lot. At *235 this point, the officers stopped Mr. Watson for investigation. Mr. Watson was advised of the circumstances surrounding the stop, and he volunteered to cooperate. He signed consent to search form, and allowed his van to be searched. The officers found a bag containing, among other things, eighty-eight grams of a white powdery substance, later determined to be cocaine.
After Mr. Watson was arrested and transported to the state police narcotics office, he advised Trooper Schmidt that he wanted to cooperate further with the investigation, and volunteered that he also had cocaine in his apartment in Algiers. At approximately 9:20 p.m., Mr. Watson and several state police narcotics agents, drove to the Algiers apartment, where Mr. Watson executed a second consent to search form. The agents discovered approximately thirty-five grams of cocaine, and other drug paraphernalia in the apartment.
Mr. Watson was then transported to the Jefferson Parish Correctional Center and booked with possession with intent to distribute eighty-eight grams of cocaine. The narrative report of Trooper Schmidt specifically states that the booking in Jefferson Parish was relative to the cocaine seized during the search of Mr. Watson's van in Jefferson Parish.
Once it was verified that all of the cocaine seized in both searches was indeed cocaine, Trooper Schmidt prepared an application for an arrest warrant for Orleans Parish relative to the thirty-five grams of cocaine seized in Mr. Watson's apartment. The arrest warrant issued and Mr. Watson was arrested by New Orleans police on November 18, 1995.
Mr. Watson subsequently was charged by bill of information in Jefferson Parish for possession with intent to distribute cocaine. He pled guilty under a Crosby plea, and was sentenced to five years at hard labor, with credit for time served. The Jefferson Parish District Attorney's Office declined to multiple bill Mr. Watson.
In connection with the Orleans Parish arrest, Mr. Watson was charged by bill of information with possession with intent to distribute cocaine....
State v. Watson, 97-0353, pp. 1-3, 706 So.2d at 1045.

ERRORS PATENT
At the sentencing hearing of October 1, 1998, the trial court indicated that it was sentencing the defendant to the minimum sentence of fifteen years, in compliance with a plea agreement agreed upon by the state. The trial court indicated that the law required that the first five years of the sentence be served without benefit of parole, probation, or suspension of sentence.
However, the offense for which the defendant was convicted occurred on October 5, 1995. At that time, La.R.S. 40:967 contained no provision mandating that the first five years of a sentence for possession with intent to distribute cocaine must be served without benefit of probation, parole, or suspension of sentence. Rather, La. R.S. 40:967 B(1) merely provided that a person found guilty of possession with intent to distribute cocaine, "... shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; ...". Because the defendant was adjudicated a second felony offender, his sentence must be served without the benefit of probation or suspension of sentence per La.R.S. 15:529.1 G. However, the defendant's sentence is amended to delete that portion of the sentence requiring that the sentence be served without benefit of parole.
No other error patent was detected.

ASSIGNMENT OF ERROR NUMBER 1
In the first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress evidence because the law enforcement officers lacked reasonable suspicion to stop him *236 and probable cause to arrest him. More specifically, he argues that the confidential informant only provided scanty information, and this scanty information was not corroborated by the officers' own observations. Consequently, the information was not sufficient under the totality of circumstances test to give the officers reasonable suspicion to stop him.
The defendant argues that his case is indistinguishable from State v. Carey, 609 So.2d 897 (La.App. 4 Cir.1992) and State v. Ruffin, 448 So.2d 1274 (La.1984) wherein courts found that lack of corroboration of an informant's tip rendered investigatory stops invalid.
In State v. Carey, 609 So.2d 897 (La. App. 4 Cir.1992), this court reversed a conviction for possession of a firearm by a convicted felon after finding that police lacked reasonable suspicion to justify the investigatory stop leading to the discovery of the gun. In State v. Carey the police received a tip from a confidential informant who had previously provided information that led to arrests, seizures and convictions. The informant told police that in approximately one hour, a short black male named Leroy, driving either a 1981-82 green Mercury Cougar or a Mercury of some type, which was in good shape, would be delivering crack cocaine in the 2300 block of Lafitte Street, in the Lafitte Housing Project. Approximately forty-five minutes later, officers maintaining surveillance observed a green Mercury Cougar with a brown top leaving the 2300 block of Lafitte Street. A black male, the defendant, was driving with another black male and a black female as passengers. The defendant stopped at a nearby used car lot and talked with someone for about five minutes. Officers later lost sight of the car, but saw the defendant briefly exit. After following the car for about one-half hour, police stopped the car and found a 9mm handgun underneath the seat. In finding that the information possessed by police did not give rise to reasonable suspicion necessary for an investigatory stop, this court stated:
Information from the confidential informant was not based on personal knowledge as to the defendant's alleged role in a cocaine delivery. The officers followed the defendant for a period of time and did not observe suspicious activity. These circumstances are distinguishable from cases which involve an on-the-scene tip by an informant who points out the car containing drugs and no mistake was possible.
609 So.2d at 900.
The instant case is factually distinguishable from State v. Carey in that in addition to the tip from the informant, Trooper Schmidt had a photograph of the defendant and was privy to information that the defendant had two prior convictions for narcotics distribution. Further, prior to actually detaining the defendant, Trooper Schmidt approached the defendant and obtained additional corroborative information from the defendant as to the defendant's identity and that the defendant planned on making a delivery to another person. The stop or detention of the defendant in the parking lot was less intrusive than the stop of the vehicle in State v. Carey.
Similarly, the case differs from State v. Ruffin wherein a reliable confidential informant provided police with information that the defendant was standing on a specified street corner attempting to gain assistance in cashing a stolen check. Based solely on the tip, the police traveled to the specified street corner where they observed the defendant getting into an automobile with two other persons. The police followed the vehicle for approximately two blocks and then pulled it over. They drew their weapons, ordered the occupants out of the vehicle, and had them place their hands on the vehicle. A search was made of the vehicle, and the police found the stolen check. The defendant was given his Miranda rights, and he gave a brief oral statement. The court found that the only *237 relevant fact provided by the informant was the location of the defendant. Noting that the police did not observe the defendant engaged in any illegal activity prior to arresting him, the court found that the evidence used to convict the defendant was the product of an illegal arrest and reversed the defendant's conviction.
Ruffin was based on lack of probable cause to arrest not upon a lack of reasonable suspicion to stop. However, unlike the police in Ruffin, the officers in the instant case did not arrest the defendant immediately based solely on the information obtained from the confidential informant. Rather, Trooper Schmidt engaged the defendant in conversation and obtained verification of the defendant's identity and his intent to make a delivery to another person. The defendant told Trooper Schmidt that the package he was to deliver was located in his van. Trooper Schmidt then asked for the defendant's permission to search the vehicle. Only after the defendant consented to the search and showed the officers where the cocaine was located, did the officers arrest the defendant.
Unlike Carey and Ruffin, it is not clear that the defendant was in fact detained or stopped by Trooper Schmidt. The issue of when a person is detained was addressed in State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95); 654 So.2d 868, wherein this court clarified the difference in an investigatory stop or detention and an approach when it stated:
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court delineated the point at which a suspect's rights have been infringed upon. Hodari D. considered the question of when an individual is "seized" within the meaning of the Fourth Amendment. The Court held that until the individual either submits to the police show of authority or is physically contacted by the police, he is not seized. The Louisiana Constitution, however, affords a higher standard of individual liberty than the Fourth Amendment of the United States Constitution because Article 1, Section 5 of the Louisiana Constitution protects citizens against an "invasion of privacy." State v. Church, 538 So.2d 993, 996 (La.1989). The Louisiana Supreme Court has held that an individual is "seized" within the meaning of Article 1, Section 5 of the Louisiana Constitution when he is either "actually stopped" or when an actual stop is "imminent." State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In State v. Tucker, 626 So.2d 707 (La. 1993), opinion adhered to on rehearing, 626 So.2d 720 (1993), the Louisiana Supreme Court adopted the Hodari D. definition of "actual stop," holding that an actual stop of a person occurs only when he submits to a show of police authority or is physically contacted by the police. Id., 626[ So.2d] at 712. The Court also explained the factors to be considered in determining whether an "actual stop" is "imminent." The Court declared:
It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.' Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an `actual stop' of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the *238 location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. (Footnotes omitted; emphasis in original). Id., 626 [So.2d ]at 712-713.
Matthews, 94-2112, 654 So.2d at 870-871.
The facts surrounding the "stop" of the defendant are somewhat sketchy and possibly contradictory. Although there was testimony that other law enforcement agents were present on the scene, there is no evidence to support the defendant's assertion that the other law enforcement agents surrounded him prior to the time he signed the consent to search form.
This court, in its previous opinion stated:
Mr. Watson then parked his vehicle near the street, and walked across the lot towards a pay phone, constantly scanning the lot. At this point, the officers stopped Mr. Watson for investigation. Mr. Watson was advised of the circumstances surrounding the stop, and he volunteered to cooperate.
State v. Watson, p. 2, at 1045
The use of the word "officers" suggests that this court concluded several officers stopped the defendant. Such a finding would be consistent with the investigative report completed by Trooper Schmidt wherein the trooper stated, "Watson was stopped for investigation by narcotics agents as he approached the coin operated telephone." However, no testimony was presented at the hearing to substantiate a finding that the defendant was stopped by anyone other than Trooper Schmidt. The only person testifying at the suppression hearing was Trooper Schmidt. Trooper Schmidt specifically testified that no other law enforcement officer was present when he stopped the defendant. Further, in his reply brief, the defendant admits that he is not contesting the fact that he was initially approached and questioned by Trooper Schmidt alone. However, the defendant contends that at some point while walking from the initial point of contact to Trooper Schmidt's vehicle, four other officers came on the scene and surrounded the defendant. While admitting that there is no evidence of record to show when this occurred, the defendant asserts that it obviously happened before he entered Trooper Schmidt's van and before he granted consent to search his van.
No testimony or other evidence was presented to show that law enforcement agents surrounded the defendant or that any show of force was made prior to the time the defendant signed the consent to search form. It appears that while several law enforcement agents were involved in the surveillance effort on the scene, Trooper Schmidt was the only agent who approached the defendant and engaged him in conversation. Additionally, there is no indication that any of the officers displayed a weapon or attempted to keep the defendant from going where he wished to go. On the contrary, Trooper Schmidt stated that he was dressed in plain clothes and did not have any visible weapons on his person when he "stopped" the defendant. The questioning of the defendant began immediately.
Absent an attempt to detain a citizen, there is no law that prohibits a law enforcement officer from engaging a citizen in conversation in order to obtain information for an ongoing investigation. Rather, a law enforcement officer is free to approach any citizen and engage him in conversation even without reasonable grounds to believe that criminal activity has occurred so long as the person is free to disregard the questioning and walk away. State v. Patterson, 588 So.2d 392 (La.App. 4 Cir.1991); State v. Duplessis, 391 So.2d 1116 (La.1980). As noted in State v. Belton, 441 So.2d 1195, cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984):
The purpose of the fourth amendment, however, is not to eliminate all contact between the police and the citizenry. Police officers do not need probable *239 cause to arrest or reasonable cause to detain each time they attempt to converse with or approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's liberty or privacy which would require some particularized and objective justification under the fourth amendment. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Williams, [(La.10/18/82), 421 So.2d 874 ]supra; State v. Lanter, 391 So.2d 1152 (La.1980).
Belton 441 So.2d at 1198-1199.
In State v. Duplessis, 391 So.2d 1116 (La.1980) police officers had received an anonymous telephone call stating that a person meeting the defendant's description was at a certain location carrying a concealed weapon. Two officers traveled to the designated location and observed the defendant, who matched the given description. The officers approached the defendant, told him of the report they had received, and advised him that he was under investigation. The officers then questioned the defendant about the contents of a leather pouch clutched under his arm. According to the officers' uncontradicted testimony, the defendant handed over the pouch, stating that he had just found it. A gun was found in the pouch, and the defendant was arrested and charged with possession of a concealed weapon by a convicted felon. The Supreme Court, noting that the defendant voluntarily handed over the gun after he was stopped for questioning but prior to being arrested, upheld the seizing of a gun. In Duplessis the court stated," [a]lthough one officer conducted a frisk of the defendant, the record indicates that the frisk was made after the defendant relinquished the bag. It is clear that the gun was not seized as a result of a `stop and frisk.' "Duplessis, 391 So.2d at 1117.
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the U.S. Supreme Court used the totality of the circumstances analysis to determine that an anonymous telephone tip, corroborated by independent police observations, provided reasonable suspicion necessary to support an investigative stop. In White, an anonymous telephone caller told police that the defendant would be leaving a particular apartment complex, at a specific time, in a brown Plymouth station wagon with a broken taillight, that she would be going to a particular motel, and that she was in possession of cocaine. Police staked out the apartment complex, and noticed a brown Plymouth station wagon with a broken taillight parked in front. They observed the defendant leave the apartment complex, enter the station wagon empty handed, and drive away. They followed the defendant as she took a route in the direction of the motel. After the defendant turned onto the highway on which the motel was located, and neared the motel, the police stopped her. She consented to a search of her vehicle, which revealed marijuana in a brown attaché case. Cocaine was later found in the defendant's purse during arrest processing.
The Court gave great weight to the informant's ability to predict "future behavior" of the defendant, i.e. that the defendant would shortly leave the apartment building, get into a particular vehicle, and drive a route that would take her to the motel, "because it demonstrated inside information." The court stated:
Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop. (Citations omitted).
Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417.
*240 The United States Supreme Court recently distinguished White in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and held that "an anonymous tip lacking indicia of reliability of the kind contemplated in Adams and White does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." Id. at 1380. In Florida v. J.L., the Miami-Dade Police received an anonymous telephone tip that at a particular bus stop, a young black male wearing a plaid shirt was carrying a gun. Two officers arrived at the specified bus stop and observed three black males, one of whom, the defendant, was wearing a plaid shirt. The officers did not observe a firearm, nor did they witness the men engage in any illegal or threatening conduct. One officer approached the defendant and instructed him to raise his hands. The officer then proceeded to frisk the defendant, whereupon the officer seized a gun from the defendant's pocket. The second officer searched the other two men at the bus stop, but nothing illegal was found.
The Court distinguished White on the grounds of reliability of the anonymous tip and corroboration of police surveillance. The Court stated:
In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," Alabama v. White, 496 U.S., at 329, 110 S.Ct. 2412, 110 L.Ed.2d 301. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Id., at 327, 110 S.Ct. 2412. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.
In White, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named hotel. Ibid. Standing alone, the tip would not have justified a Terry stop. Id., at 329, 110 S.Ct. 2412. Only after police observation showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. Id., at 332, 110 S.Ct. 2412. Although the Court held that the suspicion in White became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified White as a "close case." Ibid.
The tip in the instant case lacked the moderate indicia of reliability present in White and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what *241 the officers knew before they conducted their search.
Florida v. J.L., 120 S.Ct. at 1378-79.
In the instant case, the informant told Trooper Schmidt that the defendant would be proceeding to the Clearview Palm Shopping Center in Jefferson Parish for approximately 6:30 the evening of October 5, 1995, to make a delivery of approximately three ounces of cocaine to an unknown individual. No information was given to explain how the confidential informant knew the defendant would be delivering cocaine in that particular shopping center that evening at approximately 6:30 p.m. However, the investigative report prepared by Trooper Schmidt indicated that the call from the informant was received at about 1:00 p.m. on October 5, 1995. When the defendant actually appeared on the scene within five minutes of the reported time, the officers had good reason to believe that perhaps the informant had some type of inside information concerning the defendant's itinerary and activities. The fact that the defendant was observed scanning the area as if looking for someone was consistent with what the informant had said about him being there to deliver a package to an unknown person. The law enforcement agents could have waited for an actual exchange to occur prior to approaching the defendant. However, based on the information that had already been corroborated, the officers had sufficient information to approach and question the defendant.
In State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234, this court upheld the legality of an investigatory stop based on a tip from an informant. The initial police contact with the defendant occurred outside of his apartment in what the arresting officer termed an investigatory stop. The investigation commenced when an informant working with police purportedly telephoned the defendant to arrange the purchase of a bundle of heroin outside of the defendant's apartment. In the past, the informant had provided information resulting in at least one arrest and had previously obtained heroin from defendant. The informant told the defendant he would be driving a black Chevrolet Blazer to his apartment. This court noted that the police officers confirmed that the defendant had exited his apartment, thus corroborating information provided by the informant. As the officers approached the apartment driving a black Chevrolet Blazer the defendant waived the officers to a stop. One officer recognized the defendant as the person who the informant said was supposed to deliver a bundle of heroin to the occupant of the Blazer. This court noted that this factor also served as corroboration of the informant's information to the extent that the defendant was obviously expecting the black Blazer. This court concluded that at that point, the officer had sufficient articulable facts within his knowledge to give rise to a reasonable suspicion that defendant was committing or about to commit an offense. Thus, the court held the officers were justified in conducting an investigatory stop.
In the instant case, the confidential informant identified the defendant by name as the person who would be delivering three ounces of cocaine to an unknown person at the Clearview Palm Shopping Center at approximately 6:30 p.m. Further, the informant stated that the defendant would be driving a primer gray colored Ford Van. Trooper Schmidt verified that a 1981 Ford Van was registered to the defendant. Additionally, Trooper Schmidt already had some information in his possession to indicate that the defendant was engaged in narcotics trafficking. As part of its investigatory efforts, law enforcement agents set up surveillance at the shopping center. At approximately 6:25 p.m. the defendant arrived at the shopping center in his primer gray colored Ford Van. As he entered the shopping center, the officers observed the defendant scanning the area as if he was looking for *242 someone. Trooper Schmidt testified that he merely identified himself as a state police narcotics agent and asked the defendant if he was Jimmy Watson. After the defendant readily admitted his identity, Trooper Schmidt then asked if the defendant was delivering a package to someone that he was meeting at the shopping center. The defendant answered affirmatively. When asked the location of the package he was delivering, the defendant indicated that the package was in his vehicle. According to Trooper Schmidt, the defendant then voluntarily accompanied Trooper Schmidt to the trooper's vehicle and signed a consent form authorizing a search of his van. The defendant's arguments that no reasonable suspicion existed to stop him, and that no probable cause existed to arrest him, have no merit.

ASSIGNMENT OF ERROR NUMBER 2
In the next assignment of error the defendant argues that his statements and admissions should have been suppressed because Trooper Schmidt failed to advise him of his constitutional rights when he became the target of investigation. This is a close issue in this case.
In this assignment of error the defendant insists that he was the focus of the investigation from the moment he was approached and then surrounded by the five law enforcement officers. He maintains that it is clear from the show of force exhibited when the officers surrounded him that he was in custody prior to consenting to the search. Thus, he argues that Trooper Schmidt should have advised him of his constitutional rights immediately. Because Trooper Schmidt failed to so advise him, the defendant argues that all statements and evidence seized as a result of his conversation with Trooper Schmidt should have been suppressed as fruit of the poisonous tree.
The protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966) are only applicable when a person is the subject of a custodial interrogation. State v. Pomeroy, 97-1258 (La.App. 5 Cir. 5/13/98), 713 So.2d 642. A suspect is "in custody" for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530. Under La. C.Cr.P. 201, in order to constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. An arrest occurs when the circumstances indicate intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La. 1985); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276.
In the instant case the questioning of the defendant took place in a public place, i.e. the parking lot of a shopping center. Trooper Schmidt admitted that the defendant was the focus of the narcotics investigation during the time that he was being questioned. The evidence clearly shows that the defendant was not under arrest or in a custodial environment at the time of questioning. However, clearly the defendant could not have walked away from Trooper Schmidt after he was stopped by him.
The defendant was not formally arrested until after he showed the officers the cocaine in his vehicle. It is more probable than not that the defendant was surrounded by all five law officers on the scene, but the evidence indicates that the defendant voluntarily signed a consent form permitting a search of the van. Trooper Schmidt testified that he told the defendant that he did not have to sign the form if he did not want to. He did not recall telling the defendant that he would get a search warrant for the van or that he would put dogs *243 on his van. Additionally he denied telling the defendant he would break open the van. Once the van was searched and cocaine found in the van, the defendant was arrested and given his Miranda rights.
There is no question that at the time that the cocaine was discovered, probable cause to arrest the defendant existed. The inculpatory statements forming the basis for the instant prosecution were not made until after the defendant had been lawfully arrested and given his Miranda rights. Accordingly this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 3
In the final assignment of error the defendant reargues the double jeopardy argument previously addressed by this court in State v. Watson, 97-0353 (La.App. 4 Cir. 1/23/98), 706 So.2d 1044, writ denied, 98-0461 (La.6/26/98), 719 So.2d 1055. More specifically he argues that he was charged and pled guilty to possession with intent to distribute the eighty-eight grams of cocaine found in the van in the 24th Judicial District Court. This eighty-eight grams of cocaine, according to the defendant, was just a portion of the one hundred twenty-three grams of cocaine that he possessed during the entire course of the investigation leading to his arrest. He maintains that he constructively possessed the remaining forty-five grams of cocaine that was located at his residence in Orleans Parish. Accordingly, he argues that the present prosecution for the cocaine possessed in Orleans Parish is barred based on double jeopardy.
Under the "law of the case" doctrine, an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Abbott, 92-2731 (La.App. 4 Cir. 2/25/94), 634 So.2d 911. However, this principle is discretionary, and this court will generally not follow the doctrine if the prior ruling was clearly erroneous and would result in a manifest injustice. Turner v. Pelican, 94-1926 (La.App. 4 Cir. 9/15/95), 661 So.2d 1065, writ denied, 95-2513 (La.12/15/95), 664 So.2d 441.
The defendant cites no persuasive authority to support a finding that the court erred in its previous ruling or that a manifest injustice has occurred. Thus, this court will not reconsider its previous ruling on the double jeopardy issue.
Since deciding State v. Watson, this court has issued at least two more opinions rejecting double jeopardy arguments in cases involving the possession of illegal drugs in two different places. The facts of State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234, are indistinguishable from the facts of the instant case. The defendant in Jones was indicted on two counts of possession with intent to distribute heroin and was found guilty on both counts. The defendant was arrested with heroin and other items on his person. While he was being detained on the scene, other officers obtained a warrant and searched his apartment. More heroin was found in the apartment, and the defendant admitted to ownership of the heroin found in his apartment. On appeal he argued that the trial court erred in denying his motion to quash on grounds of double jeopardy as the two counts of possession with intent to distribute heroin was based on a single offense, i.e. one continuous act of possession of heroin. Citing State v. Watson and State v. Caballero, 472 So.2d 85 (La.App. 5 Cir. 1985), this court disagreed. The court noted the defendant's argument was the same as the argument made in this court's earlier opinion in State v. Watson, i.e. "he was committing one continuous offense that involved the simultaneous possession of heroin on his person and inside his apartment."
More recently, in State v. Baptiste, 99-0288 (La.App. 4 Cir. 3/29/00), 759 So.2d 173, this court again rejected a defendant' argument that the trial court had erred in denying a motion to quash based on double jeopardy. The underlying facts from a *244 police narrative established that the defendant had approached and distributed cocaine to an undercover officer. Later when arrested, she was found to be in possession of more drugs. She was charged with distribution and a separate count of possession with intent to distribute. The defendant argued that she should not have been prosecuted for both offenses because the acts constituted one continuous transaction. This court found that the defendant had committed two separate and distinct acts and that the prosecution for distribution as well as possession did not violate the double jeopardy clause.
The defendant presents no persuasive argument to show that this court's prior ruling was manifestly erroneous; thus, the law of the case doctrine should be adhered to. The double jeopardy argument has no merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. However, the defendant's sentence is amended to delete the requirement that the fifteen-year sentence be served without benefit of parole.
CONVICTION AFFIRMED; SENTENCE AMENDED.
NOTES
[1] The trooper's name is alternatively spelled "Schmitt" or "Schmidt" throughout the record. It is spelled Schmitt in the transcript of the motion hearing. However, it is spelled Schmidt in this court's previous opinion, on the investigative report, and on the arrest warrant. For purposes of consistency, it will be spelled Schmidt in this opinion.